FILED

NOV 20 2009

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 08-10527 |
| Plaintiff - Appellee, | D.C. No. 1:07-CR-00151-OWW-1 |
| v. | |
| JOHN MCCARTNEY, | MEMORANDUM [*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Eastern District of California
Oliver W. Wanger, District Judge, Presiding

Argued and Submitted November 2, 2009
San Francisco, California

Before:    NOONAN and W. FLETCHER, Circuit Judges, and DUFFY, [**]
District Judge.

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]     The Honorable Kevin Thomas Duffy, United States District Judge for
the Southern District of New York, sitting by designation.

Following the district court's denial of his motion to suppress evidence and his motion to dismiss the indictment, John McCartney pled guilty to four counts of possession of a machine gun in violation of 18 U.S.C. § 922(o) and fifteen counts of possession of a firearm not registered in the National Firearms Registry in violation of 26 § U.S.C. 5861(d).  McCartney appeals from the district court's denial of both motions.

We review de novo motions to suppress, including questions of whether law enforcement officials have reasonable suspicion or probable cause under given facts.  *See United States v. Decoud*, 456 F.3d 966, 1007 (9th Cir. 2006); *United States v. Bishop*, 264 F.3d 919, 924 (9th Cir. 2005).  Underlying factual findings are reviewed for clear error.  *United States v. Colin*, 314 F.3d 439, 442 (2002).  We review de novo denials of motions to dismiss based on constitutional rights.  *See United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004).

## I. Motion to Suppress Evidence

McCartney argues that the district court erred in denying his motion to suppress evidence discovered during the traffic stop of McCartney by Kern County Sheriff's Office Deputy Avery Simpson.  The district court held that the stop was justified by reasonable suspicion of a traffic violation, crediting Deputy Simpson's testimony that the rear left brake light of McCartney's truck failed to illuminate

2

over the contradictory testimony of McCartney's son, Josh, that the light worked on the day of the stop. The district court questioned Josh's credibility due to the fact that Josh rendered conclusive tests of the light assembly impossible by unnecessarily removing the assembly from the truck and severing wires in the process. Contrary to McCartney's assertion otherwise, the district court repeated this credibility determination in denying his motion to reconsider. We defer to the district court's credibility determination, *see United States v. Ruteledge*, 28 F.3d 998, 1003 (9th Cir. 1994), and conclude that the district court's finding that the taillight failed to illuminate is not clearly erroneous, *see Colin*, 314 F.3d at 442. The failure of the taillight to illuminate constitutes a traffic violation under California Vehicle Code § 24603(b) and is sufficient to justify the traffic stop. McCartney does not dispute the validity of Deputy Simpson's inventory search of the truck once McCartney was stopped. The district court therefore did not err in denying the motion to suppress evidence.

In any event, the search was independently justified by probable cause under the collective knowledge doctrine. Special Agent Sanders, of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, had probable cause to believe that McCartney illegally had a machine gun in his truck at the time of the stop. A confidential source informed Agent Sanders that McCartney possessed a machine

gun in his truck and accurately described his movements on the night of the stop. Agent Sanders knew that the source had a basis for her knowledge given her relationship with McCartney. In addition, the source's earlier statements regarding McCartney had been corroborated by three other confidential informants and by Agent Sanders's own observations. All four informants had previously stated that McCartney possessed an assortment of dangerous weapons. These facts suggested to Agent Sanders at least a "fair probability" that a machine gun was located in McCartney's truck. *See U.S. v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007) (defining probable cause); *United States v. Hill*, 55 F.3d 479, 480 (9th Cir. 1995) (corroborating stories of three separate neighbors sufficient to provide probable cause). Under the collective knowledge doctrine, Deputy Simpson permissibly relied on the fact that Agent Sanders had probable cause when he directed him to stop McCartney. *See United States v. Ramirez*, 473 F.3d 1026, 1028 (9th Cir. 2007).

McCartney argues that the collective knowledge doctrine does not apply because Agent Sanders and Deputy Simpson are not in the same department. McCartney relies on *United States v. Morales*, 252 F.3d 1070, 1077 (9th Cir. 2001), in which the Ninth Circuit held that an anonymous tip passed on from one police department to another was insufficient to provide reasonable suspicion. But

*Morales* is inapposite to this case. In *Morales*, the government did not present any evidence that the original law enforcement officials had reasonable suspicion; thus the collective knowledge doctrine could not properly come into play. 252 F.3d at 1073–77. The common knowledge doctrine applies irrespective of whether cooperating law enforcement officers are in different departments. *See United States v. Hensley*, 469 U.S. 221, 223 (1985) (police officer conducted an investigatory stop in reliance on another department's wanted flyer); *United States v. Sutton*, 794 F.2d 1415, 1426 (9th Cir. 1986) (investigatory stop by a local deputy sheriff dispatched at the request of United States Customs officials).

McCartney does not argue that the search warrant for his home was not supported by probable cause if the evidence of the machine gun in his truck is admissible. The district court therefore did not err in denying his motion to suppress evidence from his home. Even excluding the machine gun discovered in McCartney's truck, the affidavit in support of the warrant application included information from four independent confidential sources, all of whom provided specific evidence that McCartney possessed unregistered firearms. This information alone was sufficient to justify the warrant. *Cf. Hill*, 55 F.3d at 480. The inclusion of the discovered machine gun only strengthens the case.

## II. Motion to Dismiss the Indictment

McCartney also argues that the district court erred by denying his motion to dismiss the indictment. The district court held that the Second Amendment does not protect the right to possess the weapons at issue in this case: machine guns, silencers, grenades, and directional mines.

In *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008), the Supreme Court held that the Second Amendment protects the right of individuals to possess firearms against certain kinds of restrictions by the federal government. However, the Court recognized that "the Second Amendment is not unlimited," and does not include the "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 2816. It recognized that the Second Amendment protects only "the sorts of weapons . . . in common use," and does not extend to "dangerous and unusual weapons." *Id.* at 2817.

The weapons involved in this case are dangerous and unusual. McCartney's own expert testified that the machine gun is a dangerous weapon in light of the fact that "it devastated entire populations in World War I." And the possession of a machine gun by a private citizen is quite unusual in the United States. The other weapons involved in this case are even more dangerous and unusual than machine guns. Silencers, grenades, and directional mines are not "typically possessed by law-abiding citizens for lawful purposes," *Heller* 128 S. Ct. at 2815–16 (referring

6

to short-barreled shotguns), and are less common than either short-barreled shotguns or machine guns. The weapons involved in this case therefore are not protected by the Second Amendment.

**AFFIRMED**.